CEG

# U.S. District Court
## Southern District of Illinois (East St. Louis)
## CIVIL DOCKET FOR CASE #: 3:15-cv-01162-NJR-SCW

| | |
|---|---|
| Towner v. 1st MidAmerica Credit Union et al | Date Filed: 10/20/2015 |
| Assigned to: Judge Nancy J. Rosenstengel | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Stephen C. Williams | Nature of Suit: 190 Contract: Other |
| Cause: 28:1332 Diversity-Breach of Contract | Jurisdiction: Diversity |

**Plaintiff**

**Martha Towner**                              represented by   **Derek Y. Brandt**
*individually, and on behalf of all others*                    Brandt Law LLC
*similarly situated*                                           P. O. Box 487
                                                               Edwardsville, IL 62025
                                                               618-307-6116
                                                               Email: derek@brandtlawllc.com
                                                               *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**1st MidAmerica Credit Union**                represented by   **Stuart M. Richter**
                                                               Katten, Muchin et al. - Los Angeles
                                                               2029 Century Park East
                                                               Suite 2600
                                                               Los Angeles, CA 90067-2600
                                                               310-788-4400
                                                               Email: stuart.richter@kattenlaw.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Andrew J. Demko**
                                                               Katten, Muchin et al. - Los Angeles
                                                               2029 Century Park East
                                                               Suite 2600
                                                               Los Angeles, CA 90067-2600
                                                               310-788-4400
                                                               Email: andrew.demko@kattenlaw.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **William J. Kraus**
                                                               Katten, Muchin et al. - Chicago
                                                               Cook County
                                                               525 West Monroe Street
                                                               Suite 1600
                                                               Chicago, IL 60661-3693

312-902-5592
Email: william.kraus@kattenlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1-100**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/20/2015 | 1 | COMPLAINT *Class Action Complaint and Demand for Jury Trial* against 1st MidAmerica Credit Union, Does 1-100 ( Filing fee $ 400 receipt number 0754-2756047.), filed by Martha Towner. (Attachments: # 1 Exhibit 1, # 2 Civil Cover Sheet, # 3 Summons)(Brandt, Derek) (Entered: 10/20/2015) |
| 10/21/2015 | 2 | Notice of Judge Assignment. Judge Nancy J. Rosenstengel and Magistrate Judge Stephen C. Williams assigned. All future documents must bear case number 15-1162-NJR-SCW. If the parties consent to Magistrate Judge assignment, the consent form with instruction is attached for your convenience. (lmb) (Entered: 10/21/2015) |
| 10/21/2015 | 3 | Summons Issued as to 1st MidAmerica Credit Union. Original mailed to Attorney Derek Y. Brandt (lmb) (Entered: 10/21/2015) |
| 10/21/2015 | 4 | NOTICE OF ERRORS AND/OR DEFICIENCIES re Notice of Appearance. See attached document for specifics (lmb) (Entered: 10/21/2015) |
| 10/22/2015 | 5 | NOTICE of Appearance by Derek Y. Brandt on behalf of Martha Towner (Brandt, Derek) (Entered: 10/22/2015) |
| 11/09/2015 | 6 | SUMMONS Returned Executed by Martha Towner. 1st MidAmerica Credit Union served on 10/29/2015, answer due 11/19/2015. (Brandt, Derek) (Entered: 11/09/2015) |
| 11/10/2015 | 7 | MOTION to Appear Pro Hac Vice by Attorney William James Kraus $100 fee paid,receipt number 0754-2774921 by on behalf of 1st MidAmerica Credit Union. (Kraus, William) (Entered: 11/10/2015) |
| 11/10/2015 | 8 | MOTION to Appear Pro Hac Vice by Attorney Stuart M. Richter $100 fee paid,receipt number 0754-2774933 by on behalf of 1st MidAmerica Credit Union. (Richter, Stuart) (Entered: 11/10/2015) |
| 11/10/2015 | 9 | MOTION to Appear Pro Hac Vice by Attorney Andrew John Demko $100 fee paid,receipt number 0754-2775332 by on behalf of 1st MidAmerica Credit Union. (Demko, Andrew) (Entered: 11/10/2015) |
| 11/13/2015 | 10 | ORDER granting 7 Motion to Appear Pro Hac Vice of Attorney William J. Kraus on behalf of Defendant 1st MidAmerica Credit Union; granting 8 Motion to Appear Pro Hac Vice Attorney Stuart M. Richter on behalf of Defendant 1st MidAmerica Credit Union; granting 9 Motion to Appear Pro Hac Vice Attorney Andrew J. Demko on behalf of Defendant 1st MidAmerica Credit Union (lmb)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 11/13/2015) |
| 11/16/2015 | 11 | Corporate Disclosure Statement by 1st MidAmerica Credit Union. (Kraus, William) (Entered: 11/16/2015) |

| 11/16/2015 | 12 | Consent MOTION for Extension of Time to File Answer *or Otherwise Respond* by 1st MidAmerica Credit Union. (Kraus, William) (Entered: 11/16/2015) |
| 11/17/2015 | 13 | NOTICE OF ERRORS AND/OR DEFICIENCIES re Notices of Appearances for defense counsel. See attached document for specifics (lmb) (Entered: 11/17/2015) |
| 11/18/2015 | 14 | ORDER GRANTING 12 Motion for Extension of Time to file Answer filed by Defendant. Defendants answer is now due on or before **December 18, 2015**. Signed by Judge Nancy J. Rosenstengel on 11/18/15. (ceg)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 11/18/2015) |
| 11/18/2015 | 15 | NOTICE of Appearance by William James Kraus on behalf of 1st MidAmerica Credit Union (Kraus, William) (Entered: 11/18/2015) |
| 11/18/2015 | 16 | NOTICE of Appearance by Stuart M. Richter on behalf of 1st MidAmerica Credit Union (Richter, Stuart) (Entered: 11/18/2015) |
| 11/18/2015 | 17 | NOTICE of Appearance by Andrew John Demko on behalf of 1st MidAmerica Credit Union (Demko, Andrew) (Entered: 11/18/2015) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 11/24/2015 14:27:19 | | | |
| **PACER Login:** | mccunewright34:3214621:0 | **Client Code:** | CU 1st MidAmerica |
| **Description:** | Docket Report | **Search Criteria:** | 3:15-cv-01162-NJR-SCW |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARTHA TOWNER, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | **Civil No.:  3:15-cv-01162** |
| v. | |
| 1st MIDAMERICA CREDIT UNION, and DOES 1-100, | CLASS ACTION - COMPLAINT AND DEMAND FOR JURY TRIAL |
| Defendant. | |

## **COMPLAINT**

Plaintiff Martha Towner ("Plaintiff"), by her attorneys, hereby brings this class and representative action through this action against 1st MidAmerica Credit Union ("1st MidAmerica," or "Defendant") and Does 1-10.  All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys.  Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## **NATURE OF THE ACTION**

1.      This is a class and representative action brought by Plaintiff to assert claims in her own right, and in her capacity as the class representative of all others similarly situated.  This class action seeks monetary damages, restitution, punitive damages, and injunctive relief against Defendant 1st

CLASS ACTION: COMPLAINT

MidAmerica arising from its breach of its contracts with consumers in its implementation of an overdraft fee program.  Specifically, Plaintiff asserts that 1st MidAmerica charged overdraft fees for transactions for which there was money in the checking account to cover the transactions, thereby breaching the express terms of its consumer contracts, including the Opt-in Agreement.   Plaintiff also alleges that because it provided inaccurate and misleading overdraft information to its customers, under the Electronic Funds Transfer Act, 12 C.F.R. § 1005, 1st MidAmerica was not authorized to assess overdraft fees to consumers for debit card and non-recurring debit card charges.  However, 1st MidAmerica did charge its customers overdraft fees for ATM and debit card transactions in violation of 12 C.F.R. § 1005.

**PARTIES**

2.      Plaintiff is a resident of Johnson County, Kansas, and was a member of 1st MidAmerica at all times relevant to the class action allegations.

3.      Based on information and belief, Defendant 1st MidAmerica is a state chartered credit union with its headquarters located in Bethalto, Illinois.  Based on information and belief, 1st MidAmerica was named Olin Community Credit Union until October 2010.

4.      Whenever in the complaint reference is made to any act, deed, or conduct of a defendant corporation, the allegation means the defendant corporation engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the defendant corporation's ordinary business and affairs.  (Doe Defendants are collectively referred to herein and are included in the term "Defendant.")

5.      As to the conduct alleged herein each act was authorized, ratified, or directed by

Defendant's officers, directors, or managing agents.

**VENUE AND JURISDICTION**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because: 1) the claims of plaintiffs aggregated together exceed $5,000,000, and 2) some putative class members are residents of different states than the Defendant.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of and does business in Madison County, Illinois, which is in this District.

**FACTUAL ALLEGATIONS**

**A.      1st MidAmerica's Unlawful Overdraft Program**

7.      1st MidAmerica is an Illinois based credit union that provides banking services in Illinois and Missouri to over 45,000 members.  1st MidAmerica has 12 branches and has over $497 million in assets.  One of the services offered by 1st MidAmerica to consumer banking customers is a checking account.  One of the benefits 1st MidAmerica offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM machines, schedule ACH (Automated Clearing House transactions) such as certain recurring payments, and other types of transaction items that debit from the checking account. In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), 1st MidAmerica assesses overdraft fees to its customers when it determines that the customer account is overdrawn.

8.      Credit Unions, like banks, have increasingly turned to overdraft fees as a highly lucrative profit center.  An FDIC report estimated that overdraft fees represent 74% of the total services charges

that are imposed on deposit accounts in the United States.  According to the June 11, 2013 report

entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in

2012 (p. 14).

9.      The high cost of an overdraft fee is usually unfairly punitive.  In a 2012 study, more than

90% of customers who were assessed overdraft fees overdrew their account by mistake.  (May 2012

Pew Charitable Trust report entitled "Overdraft America:  Confusion and Concerns about Bank

Practices", at p. 4.)   More than 60% of the transactions that resulted in a large overdraft fee were for

less than $50.  (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p.8).  More than 50%

of those who were assessed overdraft fees do not recall opting into an overdraft program (*id*., at p. 5),

and more than two-thirds of customers would have preferred the financial institution decline their

transaction rather than paying the transaction into overdraft and charging a very large fee (*id*., at p.

10).

10.      Unfortunately, the customers who are assessed these fees are the most vulnerable

customers.  Younger, lower-income, and nonwhite account holders are among those who were more

likely to be assessed overdraft fees.  (*Id*., at p. 1.)  A 25 year old is 133% more likely to pay an overdraft

penalty fee than a 65 year old.  (*Id*., at p. 3.)  More than 50% of the customers assessed overdraft fees

earned under $40,000 per year.  (*Id*., at p. 4.)  Nonwhites are 83% more likely to pay an overdraft fee

than whites.  (*Id*., at p. 3.)

11.      In reaction to banks and credit unions taking advantage of millions of customers through

the unfair practice of charging overdraft fees through methodologies that maximize the possible

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf (last viewed October 12, 2015).

CLASS ACTION: COMPLAINT

number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues

has occurred over the past few years.  The results of this litigation include a trial verdict in California

and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay

unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of

dollars.

      12.     Furthermore, the federal government has also stepped in to provide additional

protections to customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve

Board enacted regulation permitting financial institutions to charge overdraft fees on ATM and one-

time debit card charges only if the institution first obtained the affirmative consent of the customer. 12

C.F.R. § 1005.17 ("Opt In Rule").

      13.     To qualify as affirmative consent, the opt-in notice/agreement must include, but is not

limited to, the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;

- The opt-in consent must be obtained separately from other consents and acknowledgements;

- The consent cannot serve any purpose other than opting into the overdraft program;

- The consent cannot be a pre-selected checked box;

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt-in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

14.     At all relevant times, 1st MidAmerica had an overdraft program in place for assessing overdraft fees on certain transactions which is contrary to the express terms of its contracts with members; is contrary to how 1st MidAmerica represents its overdraft program to its members; and is contrary to what consumers would expect as to when they would be assessed overdraft fees.  1st MidAmerica contracts with its members that it is entitled to assess an overdraft fee when 1st MidAmerica pays an item (an item is a check, debit card withdrawal, ATM or ACH) when it is presented without sufficient funds/ money in the account to pay the item.

15.     1st MidAmerica's contractual promise to only assess overdraft fees when there is not enough money in the account to pay the item (insufficient funds), was also provided to customers in other disclosures and marketing materials it provided to customers.

16.     However, contrary to these agreements and other marketing materials indicating that 1st MidAmerica will only charge overdraft fees when there is not enough money in the checking account to pay the transaction, 1st MidAmerica's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account or a negative balance, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (available balance) rather than the actual balance.   The available balance is the actual balance minus anticipated debits in the future (that may or may not occur) and deposits that have not yet cleared pursuant to its funds availability policy.  The use of an internal available balance rather than the actual balance to determine whether a transaction results in an overdraft and is subject to an overdraft fee is directly

contrary to the language in the contracts.  The result is that 1st MidAmerica improperly charges members overdraft fees in situations when there is money in the account to pay the item(s).

17.     This practice is in breach of agreements with Plaintiff and the class.  The Opt-in Agreement giving 1st MidAmerica the right to charge overdraft fees on debit card and ATM transactions, states that:  "An Overdraft occurs when you do not have enough money in your account to cover a transactions, but we pay it anyway" (Plaintiff's Opt-in Agreement, Exhibit 1).  Based on information and belief, the Opt-in Agreement utilized for all the putative class members had the same or substantially similar language.  Based on information and belief, the Account Agreement also used similar language as the Opt-in Agreement (such as insufficient funds or negative balance) to describe an overdraft that would be the subject of an overdraft fee.  Further, the practice of charging overdraft fees even when there are sufficient money/funds in the account is inconsistent with how 1st MidAmerica describes the circumstances of when it assesses overdraft fees in other customer materials.   Further, 1st MidAmerica has failed to inform customers of the conditions under which overdraft fees will be assessed in its agreements and other consumer materials.

18.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts.

19.     Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Martha Towner**

20.     Plaintiff was harmed by the practice of charging overdraft fees when there was money in the account to cover the transaction.  Plaintiff entered into agreements, including the Opt-in

Agreement, with 1st MidAmerica[2], wherein 1st MidAmerica contracted to charge overdraft fees only if there was not money/ sufficient funds to cover the transaction. 1st MidAmerica breached these agreements, and in breaching the Opt-In Agreement, violated Regulation E. It will be necessary to obtain Defendant's records to determine each occasion when 1st MidAmerica engaged in this practice, and the resulting damage to Plaintiff from the practice. However, for example, on February 6, 2014 Plaintiff had $94.97 in her account, before a $23.52 transaction was posted to her account leaving a balance of $71.45. Despite there being enough money in the account to cover the transaction, 1st MidAmerica assessed an overdraft fee of $29 on the transaction. It is believed that a complete review of Plaintiff's and 1st MidAmerica's records will show multiple instances of 1st MidAmerica improperly charging Plaintiff overdraft fees for transaction items despite Plaintiff having sufficient funds/money in her account to cover the transaction item(s).

21.     Furthermore, the assessment and unilateral taking of improper overdraft fees further reduces the balance and amount of funds in the account, resulting in and aggressively causing subsequent, otherwise non-overdrafting transactions to be improperly treated as transactions for which 1st MidAmerica assesses further overdraft fees . A complete evaluation of 1st MidAmerica's records is necessary to determine the full extent of Plaintiff's harm from this practice.

### CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following classes.

---

[2] Based on information and belief, 1st MidAmerica is the same credit union as Olin Community Credit Union, with the only difference being a name change. Therefore, when 1st MidAmerica is used throughout the complaint, it refers to agreements, conduct and actions taken by 1st MidAmerica whether those actions and agreements were under the Olin Community Credit Union name or 1st MidAmerica name.

23.     The "Class" is composed of two potential classes.

**The Positive Balance Class:**

    **All US residents who have or have had accounts with 1st MidAmerica who incurred overdraft fees for transactions when there was money in the checking account to pay the transactions in the ten years preceding the filing of this Complaint.**

**The Regulation E Class:**

    **All US residents who have or have had accounts with 1st MidAmerica who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of an opt-in agreement which provided inaccurate or misleading information on 1st MidAmerica's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transaction in the year preceding the filing of this Complaint.**

24.     Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant, this Court and any employees assigned to work on the case, and all employees of the law firms representing Plaintiff and the Class.

25.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

26.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

27.     **<u>Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))</u>** – The members of the Class are so numerous that a joinder of all members would be impracticable.  While the exact

number of the members of the Class is unknown to Plaintiff at this time and can be determined only by appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

28.     Upon information and belief, Defendant retains the databases, or other documentation, of transactions and account enrollment which will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice.  Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description.  Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

29.     **Commonality (Federal Rule of Civil Procedure 23(a)(2)** – The action involves common questions of law and fact.  Those common questions of law or fact predominate over questions that may affect only individual Class members.  The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

    a.  Whether Defendant had standardized Account Agreements during the class period that were provided to customers;

    b.  Whether Defendant had standardized Opt-In Agreements during the class period that was provided to customers;

    c.  Whether Defendant breached that customer agreements by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had sufficient funds/money to cover the transactions;

    d.  Whether Defendant's conduct violated Illinois Consumer Fraud and

Deceptive Business Practices Act; and

 e. Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

 30. **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as the relevant agreements and the challenged overdraft fee practice that was applied to customers' accounts are uniform for all Class members.

 31. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.  There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate.  Plaintiff and her counsel intend to prosecute this action vigorously.

 32. **Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** – The common questions of law or fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.  Further, the class action is superior to all other available methods for the fair and efficient adjudication of this case or controversy.  Because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct.  Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed.  The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a

single court.  In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

33.    Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

34.    This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a.    Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

i.    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

CLASS ACTION: COMPLAINT

ii.     Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.   The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c.   Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.     The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii.     The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv.    The difficulties likely to be encountered in the management of a Class Action.

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

35.    The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

CLASS ACTION: COMPLAINT

36.     Plaintiff and each of the Class members entered into contracts covering the subject of overdraft transactions, which contract was drafted by and is binding on Defendant.  In addition, certain of the Class members entered into an Opt-In Agreement with Defendant.

37.     The contracts authorize Defendant to assess overdraft fees only for transactions for which there was not money in the account to pay the item.

38.     In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

39.     The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

40.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

41.     Defendant breached the expressed terms of the contract by, inter alia, assessing

overdraft fees when there was money in the account to pay the item.

42.     Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

43.     As a proximate result of Defendant's breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## SECOND CAUSE OF ACTION

### (For Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)

44.     The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

45.     Defendant has engaged in, and continues to engage in, a general business practice whereby 1st MidAmerica charges overdraft fees for transactions for which there was money/sufficient funds in the checking account to cover the transactions, and provides misleading information or omits necessary information regarding this practice while failing to disclose the nature of the practice, to increase overdraft fees.

46.     Plaintiff and the Class relied upon Defendant's misrepresentations and omissions in deciding whether to enroll in the overdraft program.

47.     Defendant intended that Plaintiff and the Class would rely on Defendant's misrepresentations and omissions in deciding whether to enroll in the overdraft program.

48.     By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has violated 815 ILCS 505/2.

49.     Plaintiff and the other class members have suffered injury in fact and actual damages

including lost money and property as a result of Defendant's violations of 815 ILCS 505/2.

50.     The above described deceptive or unfair practices offend public policy and are injurious to consumers.

51.     As a direct and proximate result of the above described deceptive and unfair practices, Plaintiff and the Class members were damaged because they received less than they bargained for, and seek relief as set forth in the Prayer below.

52.     Furthermore, Defendant's illegal and wrongful conduct, as set forth above, including Defendant's self-dealing, misrepresentations, and material omissions, was intended to benefit Defendant at the expense of the Plaintiff and the Class, constituted outrageous conduct, was perpetrated by evil motive, and with reckless indifference to the rights of the Plaintiff and the Class, justifying the imposition of punitive damages.

53.     Unless Defendant is enjoined from continuing to engage in this business practice, Plaintiff and the Class members will continue to be injured by Defendant's wrongful actions and conduct.  Therefore, Plaintiff and the Class members are entitled to injunctive relief.

### THIRD CAUSE OF ACTION

### (For Unjust Enrichment/Restitution)

54.     The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

55.     Defendant received millions of dollars as a result of the wrongful and unjust misconduct alleged above.

56.     As a result, Plaintiff and the Class members have conferred a benefit on Defendant. Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit

conferred.  Defendant will be unjustly enriched should it be allowed to retain such funds.  Therefore,

Plaintiff and the Class members seek relief as set forth in the Prayer below.

## FOURTH CAUSE OF ACTION

### (For Money Had and Received)

57.     The preceding allegations are incorporated by reference and realleged as if fully set

forth herein.

58.     Defendant has obtained money from Plaintiff and the Class members by the exercise of

undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

59.     As a result, Defendant has in its possession money which in equity belongs to Plaintiff

and the Class members which should be refunded to Plaintiff and the Class members.  Therefore,

Plaintiff and the Class members seek relief as set forth in the Prayer below.

## FIFTH CAUSE OF ACTION

### (Negligence)

60.     The preceding allegations are incorporated by reference and realleged as if fully set

forth herein.

61.     As a general rule, persons have a duty to use due care to avoid injury to others, and may

be held liable if their careless conduct injures another person.  Defendant had and continues to have a

duty to maintain and preserve its customers' checking accounts and to prevent their diminishment

though its own wrongful acts.  Specifically, Defendant owed a duty of care to Plaintiff and the Class

members to not charge overdraft fees for transactions for which there were sufficient funds in the

account.

62.     Defendant breached this duty by unreasonably mishandling the accounts of Plaintiff and

the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been charged.

63.     As a proximate result of Defendant's negligence, Plaintiff and each class member has been damaged in an amount to be proven at trial.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

### SIXTH CAUSE OF ACTION

### (Violation of Electronic Funds Transfer Act)

64.     The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

65.     Because of Defendant's misrepresentations and material omissions as to the operation of the overdraft program, any consent that Defendant obtained for class members' participation in the program was fraudulently induced.

66.     Because consent to participation was fraudulently induced, Defendant failed to comply with 12 C.F.R. § 1005.17 which requires affirmative consent.

67.     Because of Defendant's failure to comply with 12 C.F.R. § 1005.7 it is liable for actual and statutory damages, as well as attorney fees and costs of suit pursuant to 12 U.S.C. § 1693m.

### PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1.     For an order certifying this action as a class action;

2.     For compensatory and punitive damages on all applicable claims and in an amount to be proven at trial;

3.     For an order requiring Defendant to disgorge, restore, and return all monies wrongfully

obtained together with interest calculated at the maximum legal rate;

4.    For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there are sufficient funds/ money in the account, and providing accurate and reliable information regarding the overdraft practice;

5.    For costs;

6.    For interest;

7.    For attorneys' fees under the Illinois Consumer Fraud and Deceptive Business Practices Act, the common fund doctrine other applicable law, and the customer account agreement.

8.    For such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff and the Class members demand a trial by jury on all issues so triable.


DATED:  October 20, 2015

BY: */s/ Derek Y. Brandt*
Derek Y. Brandt, #6228895 (IL)
derek@brandtlawllc.com
**Brandt Law LLC**
P.O. Box 487
Edwardsville, IL  62025
Telephone:  (618) 307-6116

Richard D. McCune, CA State Bar #132124*
rdm@mccunewright.com
Jae (Eddie) K. Kim, CA State Bar #236805*
jkk@mccunewright.com
**McCuneWright llp**
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275


Taras Kick, CA State Bar #143379*
taras@kicklawfirm.com
Thomas A. Segal, CA State Bar #222791*
thomas@kicklawfirm.com
**THE KICK LAW FIRM, APC**

201 Wilshire Boulevard
Santa Monica, California 90401
Telephone:   (310) 395-2988
Facsimile: (310) 395-2088

*Pro Hac Vice* applications to be submitted

*Attorneys for Plaintiff Martha Towner*
*and the Putative Class*

CLASS ACTION: COMPLAINT

# Olin Community
# CREDIT UNION
www.olincreditunion.org • (618) 258-3168

## What You Need to Know about Overdrafts and Overdraft Fees

An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways:

1. We have standard overdraft practices that come with your account.
2. We also offer overdraft protection plans such as link to a savings account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans.

This notice explains our standard overdraft practices.

### What are the standard overdraft practices that come with my account?

We do authorize and pay overdrafts for the following types of transactions:
* Checks and other transactions made using your checking account number
* Automatic bill payments

We do not authorize and pay overdrafts, after August 15, 2010, for the following types of transactions unless you ask us to (see below):
* ATM Transaction
* Everyday debit card transactions

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction.

If we do not authorize and pay an overdraft, your transaction will be declined.

### What fees will I be charged if Olin Community Credit Union pays my overdraft?

Under our standard overdraft practices:
* We will charge you a fee of **$25** each time we pay an overdraft.
* There is no limit on the total fees we can charge your account.

### What if I want Olin Community Credit Union to authorize and pay overdrafts on my ATM and everyday debit card transactions?

If you want us to authorize and pay overdrafts on ATM and everyday debit card transactions, call 1-800-345-4216, visit www.olincreditunion.org, or complete the form below and mail it to Olin Community Credit Union, PO Box 210, Bethalto, IL 62010. You may present this form to any OCCU location.

---

*By agreeing to have my overdrafts paid by the credit union, I understand that I have a right to revoke or change my election at any time. The revocation must be provided in writing.*

X̲ I want Olin Community Credit Union to authorize and pay overdraft on my ATM and everyday debit card transactions.

____ I do not want Olin Community Credit Union to authorize and pay overdraft on my ATM and everyday debit card transactions. By choosing this option, OCCU will not authorize and pay these transactions after August 15, 2010.

Printed Name: _Martha Towner_    Account Number: _Redacted_

Signature: _Martha Towner_    Date _Tuesday, June 29, 2010_

| For credit union employee use only: | | |
|---|---|---|
| If completed by phone: Date:_____ Time:_____ | Employee:_____ | |
| Portico maintained: Date:_____ | Employee:_____ | |
| Message account: Date:_____ | Employee:_____ | |

---

| 731 E. Bethalto Dr. | 3553 College Ave. | 419 N. Shamrock | 5300 Godfrey Rd. | 300 W. County Rd. |
|---|---|---|---|---|
| Bethalto, IL 62010 | Alton, IL 62002 | East Alton, IL 62024 | Godfrey, IL 62035 | Jerseyville, IL 62052 |